# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tinicum Township | : | |
| | : | |
| v. | : | No. 2114 C.D. 2014 |
| | : | |
| Allan J. Nowicki, River Road | : | |
| Quarry, LLC, Pennswood Hauling, | : | |
| LLC, and RRQ, LLC, | : | |
| | : | |
| Appellants | : | |
| | : | |
| Tinicum Township | : | |
| | : | |
| v. | : | No. 734 C.D. 2015 |
| | : | |
| Allan J. Nowicki, River Road | : | Argued:  February 8, 2016 |
| Quarry, LLC, Pennswood Hauling, | : | |
| LLC, and RRQ, LLC, | : | |
| | : | |
| Appeal of: Allan J. Nowicki | : | |


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  March 31, 2016**

Allan J. Nowicki, River Road Quarry, LLC (River Road), Pennswood Hauling, LLC (Pennswood), and RRQ, LLC (RRQ) (together, Appellants) appeal from three orders of the Court of Common Pleas of Bucks County (trial court). The first Order, issued on October 15, 2014, preliminarily enjoins Appellants from, *inter alia*, conducting any further mulch operations on a 56-acre parcel owned by

RRQ located in the Township (the Property) on the basis that the operation violates the Township's Zoning Ordinance (Ordinance). The second Order, also filed on October 15, 2014, finds Mr. Nowicki and River Road in contempt for violating a January 14, 2013 Injunction Order (2013 Injunction) related to the mulch operation operated on an adjacent property (the 3-Acre Parcel). The third Order, filed on March 31, 2015, orders Mr. Nowicki and River Road to pay sanctions in the amount of $14,685.70 as a result of the trial court's October 15, 2014 contempt Order. On appeal, Appellants argue that the trial court erred by issuing the October 15, 2014 preliminary injunction. Appellants contend that the mulching operation on the Property does not violate the Ordinance because it qualifies as an agricultural operation or forestry activity protected by Sections 107, 603(f), and 603(h) of the Pennsylvania Municipalities Planning Code (MPC)[1] and Section 2 of the Act commonly known as the Right to Farm Act.[2] Appellants also argue that the trial court erred by holding Mr. Nowicki and River Road in contempt because they did not willfully violate the trial court's 2013 Injunction. We affirm.

## I. BACKGROUND

### A. Prior Litigation on the 3-Acre Parcel

In order to address the issues involved in this appeal, we first review our September 9, 2014 *en banc* decision in <u>Tinicum Township v. Nowicki</u>, 99 A.3d 586 (Pa. Cmwlth. 2014), which involves essentially the same parties, similar legal

---

[1] Act of July 31, 1968, P.L. 805, <u>as amended</u>, 53 P.S. §§ 10107, 10603(f), (h).

[2] Act of June 10, 1982, P.L. 454, <u>as amended</u>, 3 P.S. § 952.

issues, and the 3-Acre Parcel. We set forth the factual background in that case as follows:

> The Property is a three-acre former quarry located in the Township's E (Extraction) Zoning District. Pennswood hauls raw materials, including tree stumps, yard waste, and logs to the Property; some similar materials are brought to the Property by landscapers. River Road processes these materials into mulch using a tub grinder. Pennswood then hauls the finished mulch off the Property to buyers. (Trial Ct. Op. at 1–2; [Tinicum Township Zoning Hearing] Board [(Board)] Decision, Findings of Fact (FOF) ¶¶ 11, 18.)

> On June 26, 2009, the Township Zoning Officer sent an enforcement notice to River Road stating that its mulching operation was in violation of the [Township's Zoning] Ordinance. In response, River Road ceased production and sale of the mulch. River Road resumed mulching operations in the Spring of 2011. The Township Zoning Officer issued a second Enforcement Notice (Notice) on October 13, 2011. This Notice stated that [River Road and Pennswood] were in violation of Sections 601.2 and 1302 of the Ordinance for operating non-permitted mill, warehouse, and wholesale uses on the Property in the E (Extraction) Zoning District. (Trial Ct. Op. at 2; Notice at 2, October 13, 2011.)

> [River Road and Pennswood] appealed the October 13, 2011 Notice and a hearing was held before the Board. The Township presented the testimony of its Zoning Officer and Herbert Cook, the owner of the parcel from which the Property had been subdivided. [River Road and Pennswood] presented the testimony of Allan Nowicki, owner of River Road and co-owner of Pennswood, and Jonathan Nowicki, co-owner of Pennswood. Following the hearing, the Board issued its Decision upholding the October 13, 2011 Notice and concluding that the mulching operation was not a permitted use on the Property. In reaching this conclusion, the Board held that the mulching operation did not qualify as an A–1 crop farming/nursery use or an A–6 forestry use under the Ordinance. (Board Decision, Conclusions of Law (COL) ¶ 2.) It was important to the Board's holding that none of the raw materials from the mulching operation were derived from the Property itself. (COL ¶¶ 2–3.) The Board analogized the situation to the raising of sheep:

3

> If a farmer raises sheep and shears the wool and then sells the wool to a factory which knits that wool into sweaters, the processing of the wool into sweaters at the factory is not an agricultural use but is a manufacturing use. The hauling of wood produced elsewhere onto the site for further processing is not an agricultural use or a forestry use.

> (COL ¶ 4.) [River Road and Pennswood] appealed the Board's Decision to the trial court. Without taking new evidence regarding the appeal, the trial court affirmed the Board's Decision and concluded that the mulching operation was not an agricultural or forestry use.

Tinicum Township, 99 A.3d at 588-89 (footnotes omitted).

On appeal to this Court, River Road and Pennswood argued that the trial court erred in holding that the mulching operation does not qualify as an agricultural or forestry operation protected by the MPC and the Right to Farm Act. Upon review, we first analyzed Sections 603(f) and 603(h) of the MPC and concluded that "if the mulching operation qualifies as a forestry activity or an agricultural operation, then pursuant to Section 603, the Ordinance may not operate to prevent it on the Property." Tinicum Township, 99 A.3d at 590. To determine whether the mulching operation qualified as either a forestry activity or an agricultural operation under the MPC, we looked to the definitions of the terms in Section 107 of the MPC, as well as our interpretation of those terms in Stoltzfus v. Zoning Hearing Board of Eden Township, Lancaster County, 937 A.2d 548, 549-50 (Pa. Cmwlth. 2007) and Clout, Inc. v. Clinton County Zoning Hearing Board, 657 A.2d 111, 114 (Pa. Cmwlth. 1995). We reasoned that the protections of the MPC are "not necessary where the use in question has no connection to the land and could be conducted on any piece of property." Tinicum Township, 99 A.3d at 591. Accordingly, we held that:

4

in order to qualify as either an agricultural operation or a forestry activity as defined by Section 107 of the MPC and protected by Section 603(f) and 603(h), the use in question must have some connection to or utilization of the land itself for production of trees, livestock or agricultural, agronomic, horticultural, silvicultural, or aquacultural crops or commodities. We conclude that, under the circumstances of this case, the mulching operation at issue does not qualify as an agricultural operation or forestry activity under the MPC.

Id. Similarly, we concluded that mulching operations fall under the protections of the Right to Farm Act if the mulching operation has "some connection between the use at issue and the employment of the property in question for the production of an agricultural, agronomic, horticultural, silvicultural, or aquacultural crop or commodity." Id. at 593. Applying the above principles to the facts in the case, we held that "[b]ecause none of the raw materials from the mulching operation are produced on the [3-Acre Parcel] and none of the resulting mulch is used for the production of livestock, crops, or agricultural commodities on the [3-Acre Parcel], the mulching operation is not a 'normal agricultural operation' as defined by Section 2 of the Right to Farm Act." Id. (quoting 3 P.S. § 952).

While Tinicum Township was under review by this Court, the trial court issued an Agreed Upon Interim Order on June 8, 2012. That Order temporarily enjoined Mr. Nowicki and River Road from storing mulch-related material west of a line drawn on the 3-Acre Parcel, operating the business outside of the hours of 7 a.m. and 5 p.m. Monday through Saturday, and from leaving dust on the driveway. (Township's Petition for Preliminary Injunction and Contempt (Petition), Ex. B,

5

Hr'g Tr. at 2-10, June 8, 2012, R.R. at 71a-80a.)[3]  On January 14, 2013, the trial court entered an order finding Mr. Nowicki and River Road in contempt of the June 8, 2012 Order and preliminarily enjoining Mr. Nowicki and River Road to comply with the following terms and conditions:

> A. No further materials for the processing of mulch and firewood may be brought onto the [3-Acre Parcel].
>
> B. [Mr. Nowicki and River Road] may continue to process the materials already onsite into mulch material until March 15, 2013 when all such processing activities must stop.
>
> C. [Mr. Nowicki and River Road] may sell the mulch which they process on the Property until May 15, 2013 at which time all mulch related activities, including the sale of mulch, shall cease.  Any mulch and firewood remaining on the [3-Acre Parcel] on May 15, 2013 shall remain on the Property.
>
> D. The hours of operation of the processing of mulch and truck traffic to and from the [3-Acre Parcel] shall continue to be 7:00 A.M. to 5:00 P.M., Monday through Saturday, with no activities related to the mulch operation on Sundays.
>
> E. No wood materials, whether they be raw materials, chips or mulch piles, may be stored west of the easterly line drawn on T - 17.

(2013 Injunction, January 14, 2013, R.R. at 8a-9a.)

## B. Instant Litigation on the 56-Acre Parcel

On April 24, 2013, four months after the trial court enjoined Mr. Nowicki and River Road, Mr. Nowicki's wife formed RRQ.  (Trial Ct. Op., October 15, 2014 (October 2014 Op.), at 6.)  RRQ purchased the Property on May 7, 2013.

---

[3] The June 8, 2012 Agreed Upon Interim Order does not appear in the certified record.

(October 2014 Op. at 6.) The Property is a 56-acre active quarry that surrounds the 3-Acre Parcel at issue in <u>Tinicum Township</u> and the 2013 Injunction on three sides. (October 2014 Op. at 5.) Like the 3-Acre Parcel, the Property is located in the Township's E (Extraction) Zoning District. (October 2014 Op. at 5.)

Following the purchase of the Property, the mulch operation operated by Pennswood on the 3-Acre Parcel was moved to the Property. (October 2014 Op. at 6.) On August 20, 2013, the Township issued an Enforcement Notice to RRQ, Mr. Nowicki, and Pennswood, stating that, by "allowing for the establishment of wood processing activities" on the Property, they were in violation of various provisions of the Ordinance. (Enforcement Notice at 1, R.R. at 27a.) The Enforcement Notice lists the specific violations and states that RRQ, Mr. Nowicki, and Pennswood "are to commence corrections of these violations within five (5) days of this notice and correct all violations within thirty (30) days of notice." (Enforcement Notice at 2, R.R. at 28a.) The Enforcement Notice further states that "[f]ailure to comply with this notice within the time specified, . . . constitutes a violation, and is subject to a fine of up to $500.00 per day . . . ." (Enforcement Notice at 2, R.R. at 28a.) Appellants attempted to appeal the Enforcement Notice two times. The first attempt was denied because Appellants' appeal "did not contain an application fee or a proposed plan." (October 2014 Op. at 7.) The second attempt was rejected as untimely. (October 2014 Op. at 7.)

On October 3, 2013, the Township filed a Complaint in equity and the instant Petition.[4] In the Petition, the Township alleges that Appellants: (1) continue to manufacture and sell mulch on the Property in violation of the Ordinance, "causing noise, dust and excessive truck traffic," which "constitutes a nuisance to the neighboring properties"; (2) continue to store materials associated with the manufacture and sale of mulch from the Property in the floodway of the Delaware River, presenting a danger to the public health in the event of flooding and violating "the [Ordinance] and [the Federal Emergency Management Agency's (FEMA)] Floodplain Regulations"; and (3) "permitted a landscaper to dump piles of soil and stone in the floodway of the Delaware River . . ." on the 3-Acre Parcel. (Petition ¶¶ 4-6, R.R. at 37a.) The Petition further alleges that Mr. Nowicki, River Road, and Pennswood are in contempt of the 2013 Injunction regarding the 3-Acre Parcel by failing to comply with the conditions set forth therein. (Petition ¶¶ 11-14, R.R. at 40a-41a.)

Appellants filed an Answer to the Petition denying all the material allegations therein. The trial court held four hearings on the matter.[5] Upon review of the evidence, the trial court issued two orders on October 15, 2014: the first granting the Petition with regard to the request for a preliminary injunction and

[4] The Petition is entitled: "Petition for Preliminary Injunction to Enjoin the Processing, Manufacturing and Sale of Mulch on the RRQ, LLC Property and to Order the Defendants to Remove all the Material They Have Placed in the Floodway of the Delaware River and to Find the Defendants, Allan J. Nowicki, River Road Quarry, LLC and Pennswood Hauling, LLC, in Contempt of this Court's Order of January 14, 2013 With Regard to the River Road Quarry Property." (Petition, R.R. at 35a.)

[5] The hearings were held on October 22, 2013, February 28, 2014, April 30, 2014, and May 15, 2014.

8

consolidating the instant matter with the litigation on the 3-Acre Parcel, and the second holding Mr. Nowicki and River Road in contempt for violating the 2013 Injunction. On March 31, 2015, the trial court imposed sanctions upon Mr. Nowicki and River Road in the amount of $14,685.70.

The trial court explained its reasoning in three memoranda opinions. The trial court's first opinion was issued on October 15, 2014 and accompanied the two Orders issued on that date. The trial court issued a second opinion on June 4, 2015 in response to Appellants' first Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (Concise Statement).[6] The trial court then filed a Supplemental Opinion on September 1, 2015 in response to a second Concise Statement filed by Appellants. The trial court's October 2014 opinion, which accompanied its Orders of that date, states in relevant part:

> We find that [Appellants'] mulch operation on the [Property] violates the Ordinance. On that basis, we issue a preliminary injunction prohibiting [Appellants] from conducting any further mulch operation on the [Property], and requiring [Appellants] to remove all mulching materials from the 3-Acre Parcel and [the Property].

---

[6] Pa. R.A.P. 1925(b). Rule 1925(b) provides in relevant part:

If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Id.

Under Section 617 of the [MPC], a township may obtain injunctive relief by showing that there has been a violation of the zoning ordinance. *See* 53 P.S. § 10617; *Gateway Motels v. Municipality Monroeville,* 525 A.2d 478, 482-483 (Pa. Cmwlth. 1987). A township is not required to establish irreparable harm. *Gateway Motels,* 525 A.2d at 483. [Appellants'] mulch operation on the [Property] (like their prior mulch operation on the 3-Acre Parcel) is not a permitted use in the E (Extraction) Zoning District of the Ordinance.

. . . .

The Commonwealth Court's reasoning [in Tinicum Township] compels the conclusion that, like the mulch operation on the 3-Acre Parcel, the mulch operation on the [Property] is not a protected forestry or agricultural use. As we have described above, we find that the mulch operation on [the Property] is nearly identical to the previous mulch operation on the 3-Acre Parcel. [Appellants] simply moved their mulch operation to the [Property] following our January 14, 2013 Order enjoining them from continuing the mulch operation on the 3-Acre Parcel. Because the Commonwealth Court concluded that the mulch on the 3-Acre Parcel violated the Ordinance and was not a forestry or agricultural use, we find that the mulch operation on the [Property] also violates the Ordinance and is not a forestry or agricultural use.

(October 2014 Op. at 9-10.)

The trial court found Appellants' argument that the mulch operation on the Property does not violate the Ordinance because the mulch operation on the Property is materially different than the mulch operation on the 3-Acre Parcel unpersuasive. According to the trial court:

The only two potential material differences between the mulch operation on the 3-Acre Parcel compared to the [Property] that [Appellants] note are: (1) they use some "wood fibers" from the [Property] to make mulch, whereas none of the mulch made on the 3-Acre Parcel came from raw materials found on the property; and (2) [Appellants] intend to use trees from the [Property] to make mulch

10

and utilize some of the finished mulch product on the [Property]. *([Def, Br. at 14-15].)* Neither is a compelling reason to decline to apply the Commonwealth Court's opinion to the mulch operation on the [Property].

First, the amount of "wood fibers" from the [Property] that [Appellants] have used in the mulch process is insignificant compared to the raw materials that [Appellants] use from offsite sources. Jonathan Nowicki described the "wood fibers" that were collected from the [Property] for processing into mulch as "saplings and brush" as well "trees that were fallen down and blown over that I cleaned up." *(Id.* at 11). This is insignificant relative to the scale of the mulch operation, where the vast majority the raw wood material that is used in the mulch operation on the [Property] is from offsite trees. Landowner characterized the mulch operation as using raw wood material brought onto the property from offsite sources. (N.T., 4/30/14 p. 160). He estimated that in a typical year between ten (10) and twenty (20) percent of the raw wood material would come from property he has an interest in, while the remainder would come from other sources - "wood fibers" from the [Property] were not included in the estimation. *(Id.* at 176). Landowner detailed that he obtains raw wood material from a variety offsite sources including other properties he owns, third parties dumping it at the site, and purchasing it on the marketplace. *(Id.* at 164-165). He discussed over twenty properties he owns from which he collects raw wood material and deposits onto the [Property]. *(ld.* at 169-174). He also testified that he obtains wood from third party landscapers in exchange for finished mulch. *(Id.* at 256). Based on this testimony, we find that an insignificant amount of "wood fibers" from the [Property] are used in the mulch operation.

Nor is the mulch made on the [Property] used on the Property. [Mr. Nowicki] admitted that he has not used any of the finished mulch on the 56-Acre Parcel. *(ld.* at 180). Likewise, at the time of the May 13, 2014 hearing, Jonathan Nowicki testified that two (2) to six (6) trailer loads of mulch leave the site per day and are delivered to third parties. (N.T., 5/13/14 p. 22.) Therefore, because the vast majority of raw materials for the mulch operation on the [Property] are brought onto the [P]roperty from offsite sources, and all of the resulting mulch product is then delivered offsite rather than used on the [P]roperty, we find that [Appellants'] mulch operation has no connection to the [Property], and could be conducted on any piece of property. *See Tinicum*, [99 A.3d at 591].

11

Second, we find that [Appellants'] purported intent to use trees from the [Property] and to use the finished mulch on the [Property] is not credible. It has been over a year since they purchased the [Property], but [Appellants] have yet to actually use any trees from the [Property] in the mulch operation, nor have they used any mulch on the [Property]. [Appellants'] course of conduct in this action displays their attempts to find any legal loophole possible to shoehorn the mulch operation into compliance with the Ordinance or protection under the MPC or Right to Farm Act, and evade Orders of Court. We find that [Appellants'] claims of intent are the latest such attempt in a long line of tactics, and those claims are not credible.

(October 2014 Op. at 11-13.)

With regard to its Order finding Mr. Nowicki and River Road in contempt, the trial court explained that the Township met its burden to prove by a preponderance of the evidence that Appellants violated four of the five conditions set forth in the 2013 Injunction. (October 2014 Op. at 14-20.) The trial court also concluded that those activities that did not violate the 2013 Injunction and, therefore, could not form the basis of the contempt Order, "clearly violate[] the spirit of the [2013 Injunction]" by exhibiting a "course of conduct [that] shows [Appellants'] determination to evade Orders of Court." (October 2014 Op. at 15.) This appeal followed.

## II. DISCUSSION

Before this Court, Appellants argue that there are critical distinctions between the instant matter and Tinicum Township that justify a different result. Appellants also contend that the trial court erred and abused its discretion when it found Mr. Nowicki and River Road in contempt and ordered sanctions. In addition to providing argument rebutting Appellants' arguments, the Township asserts that

12

Appellants failed to preserve any issues for appellate review as none of Appellants' arguments raised in their Brief to this Court were listed in Appellants' Concise Statement. We shall address each issue seriatim, starting with the Township's waiver argument.

## A. Waiver

As a preliminary matter, the Township argues that Appellants failed to preserve any issues for appellate review because Appellants did not include the issues raised here in either their First or Second Concise Statements. According to the Township, Appellants' First Concise Statement is "simply a recitation of selected quotes from [the trial court]'s Order and Memorandum Opinion of October 15, 2014. Nowhere in that recitation of quotes do the Appellants identify the errors that they contend were committed by the trial court . . . ." (Township's Br. at 17.)

In response, Appellants first argue that the quotations listed in their First Concise Statement sufficiently raise all the relevant issues in this appeal. Second, Appellants argue that the Concise Statements were filed by Mr. Nowicki acting pro se, and that this Court should review the Concise Statements under the relaxed standard used when analyzing filings by pro se litigants. Third, Appellants contend that precluding review of the issues raised on appeal due to the inadequacy of Appellants' pro se filing "would be the epitome of elevating form over substance and would ignore the principle that the law favors deciding cases on their merits." (Appellants' Reply Br. at 14.) Finally, Appellants argue that the bright-line waiver rule established in Commonwealth v. Lord, 719 A.2d 306, 309

13

(Pa. 1998) should not apply here because <u>Lord</u> and its progeny involve instances where a concise statement was not filed at all, not where the statement was less than clear.

While Appellants were technically represented by counsel at the time they filed their Notice of Appeal and First Concise Statement,[7] it is clear that the relationship between Appellants and their counsel was strained, leading Mr. Nowicki to file the appeal and two Concise Statements pro se.[8] Appellants' first Concise Statement is a list of quotations from the trial court's October 15, 2014 Opinion that Appellants found objectionable. (First Concise Statement, C.R. at Item 33.) Upon review of Appellants' First Concise Statement, the trial court issued an opinion on June 4, 2015, stating in relevant part:

> A plain reading of Appellants' "Statement of Matters" reveals that it is simply a repetitive recitation of selected statements extracted from this Court's Order and Memorandum Opinion of October 15, 2014.

---

[7] Appellants were represented by counsel during the proceedings in the trial court. However, a week before Appellants filed their Notice of Appeal on November 20, 2014, Appellants' counsel petitioned the trial court to withdraw on the basis of Appellants' lack of cooperation and failure to pay for legal services. (Petition to Withdraw, C.R. at Item 28.) Upon receiving Appellants' Notice of Appeal, the trial court issued an order on November 24, 2014 pursuant to Section 1925(b) of the Rules of Appellate Procedure directing Appellants to file a concise statement. (Docket at 2, R.R. at 2a.) Appellants filed the First Concise Statement on December 15, 2014, a week prior to the trial court granting counsel permission to withdraw on December 22, 2014. (Docket at 3, R.R. at 3a.) Upon receiving notice that Appellants appealed the trial court's March 31, 2015 Order, the trial court ordered Appellants to file a second Concise Statement on May 4, 2015. (Docket at 3, R.R. at 3a.) Appellants filed their Second Concise Statement, also pro se, on May 19, 2015.

[8] The trial court directed Mr. Nowicki to obtain counsel for his LLC businesses. (Trial Ct. Supp. Op., September 1, 2015, at 3.) At a December 16, 2014 hearing on Appellants' counsel's Petition to Withdraw, the trial court advised Mr. Nowicki that his failure to obtain counsel would not slow the proceedings. (Trial Ct. Supp. Op., September 1, 2015, at 3.)

14

Appellants have failed to identify any issue alleging Court error, and as a consequence, this Court is unable to prepare a responsive legal analysis. Appellants have therefore failed to preserve any issue for appeal in this instance, and we respectfully suggest that Appellants' appeal be dismissed.

(Trial Ct. Op., June 4, 2015, at 6.)

Appellants' Second Concise Statement addressed the trial court's March 31, 2015 Order imposing sanctions and alleged: (1) the trial court lacked jurisdiction to assess a penalty based on the October 15, 2014 Order because that Order was appealed to this Court; (2) the Township did not prove its case; (3) the amount of sanctions were arbitrary and capricious; and (4) Mr. Nowicki is not the owner of record of the Property. (Second Concise Statement, C.R. at Item 45.) In its September 1, 2015 Supplemental Opinion, the trial court addressed the issues raised in Appellants' Second Concise Statement. However, none of the issues included in the Second Concise Statement were raised in Appellants' Brief to this Court, which does not contain any argument related to the trial court's March 31, 2015 Order.

Unfortunately, we are constrained to agree with the trial court that Appellants failed to preserve any issues for review. In Lord, the Supreme Court of Pennsylvania held that "Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. **Any issues not raised** in a 1925(b) statement **will be deemed waived**." Lord, 719 A.2d at 309 (emphasis added). Lord established "a bright-line rule" that allows appellate courts to determine "which issues were presented to the trial court,

15

and thus preserved for appeal." Commonwealth v. Schofield, 888 A.2d 771, 774 (Pa. 2005).

Appellants are correct that most cases following Lord address situations where an appellant has not filed a concise statement at all. Nevertheless, the rule established in Lord is also applicable to concise statements that are unclear or vague.

> [O]ur courts acknowledge a concise statement that is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no statement at all. Commonwealth v. Seibert, 799 A.2d 54 (Pa. Super.2002). When a trial court has to "guess" what issues an appellant is appealing, that is not enough for meaningful review. Commonwealth v. Dowling, 778 A.2d 683 (Pa. Super.2001). Moreover, when an appellant fails to address the issues pursued on appeal in a concise manner, the trial court is clearly impeded in its preparation of legal analysis. In re Estate of Daubert, 757 A.2d 962 (Pa. Super.2000).

Caln Nether Company, L.P. v. Board of Supervisors of Thornbury Township, 840 A.2d 484, 490 (Pa. Cmwlth. 2004). Because the First Concise Statement, addressing the trial court's Orders of October 15, 2014, is too vague to allow the trial court to identify the issues raised on appeal, we conclude that Appellants have failed to preserve any issues for appeal related to the October 15, 2014 Orders. Furthermore, while the Second Concise Statement, addressing the trial court's March 31, 2015 Order, sufficiently identifies the issues Appellants wish to appeal, none of the issues raised in the Second Concise Statement are raised by Appellants in their Brief to this Court. See Wirth v. Commonwealth, 95 A.3d 822, 837 (Pa. 2014) (holding that "[w]here an appellate brief fails . . . to develop the issue in any

16

other meaningful fashion capable of review, that claim is waived." (internal citations omitted)).

Even if the issues raised in Appellants' Brief to this Court had not been waived, we would affirm the trial court's Orders.

### B. Preliminary Injunction

Our review of a trial court's grant of a preliminary injunction is highly deferential. Township of Middle Smithfield v. Kessler, 882 A.2d 17, 21 (Pa. Cmwlth. 2005). The Pennsylvania Supreme Court explained the applicable standard of review as follows:

> on an appeal from the grant or denial of a preliminary injunction, **we do not inquire into the merits of the controversy**, but only examine the record to determine if there were **any apparently reasonable grounds** for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was **palpably erroneous or misapplied** will we interfere with the decision of the [trial court].

Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc., 828 A.2d 995, 1000 (Pa. 2003) (emphasis added) (quoting Roberts v. Board of Directors of School District, 341 A.2d 475, 478 (Pa. 1975)).

The proponent of the injunction bears the burden of showing that the prerequisites for a preliminary injunction are met. In the context of a municipality seeking to enjoin a violation of an ordinance, "a municipality need only prove a violation of its ordinance to establish its entitlement to an injunction. Irreparable harm need not be demonstrated." Paupack Township, Wayne County ex rel. Board

17

of Supervisors v. Lake Moc-A-Tek, Inc., 863 A.2d 615, 618 (Pa. Cmwlth. 2004). Thus, our review of the trial court's decision to preliminarily enjoin Appellants is limited to whether the trial court had any reasonable ground to conclude that Appellants violated the Ordinance or palpably misapplied the law.

The fact that the Property is in the same E (Extraction) Zoning District as the 3-Acre Parcel is not in dispute. (October 2014 Op. at 9.) Shawn McGlynn, the Township's Zoning Officer, testified that upon learning that the Property was purchased by Appellants, he made periodic visits to the Property between May and early fall of 2013. (Hr'g Tr. at 15-16, October 22, 2013, C.R. at Item 22.) Mr. McGlynn testified that he observed every aspect of the mulching operation on the Property and concluded that it was "[v]ery much almost identical to what was taking place on the [3-Acre Parcel]." (Hr'g Tr. at 16, October 22, 2013.) Because the Property is in the same zoning district as the 3-Acre Parcel, Mr. McGlynn's testimony that the two mulching operations are identical provides the trial court with reasonable grounds to conclude that Appellants were violating the Ordinance.

Furthermore, the trial court's conclusion that the differences between the mulching operations on the two parcels were of no consequence is not a palpable misapplication of our decision in Tinicum Township. Appellants argue that the trial court misunderstood this Court's holding in Tinicum Township and that a proper application of that case to the facts here compels a conclusion that the mulching operation on the Property is a protected agricultural or forestry operation under the MPC and the Right to Farm Act. Appellants understand our decision in Tinicum Township as standing for the proposition that the protections of Sections

18

603(f) and 603(h) of the MPC, and the Right to Farm Act, apply to mulching operations that have "'some connection to or utilization of the land itself.'" (Appellants' Br. at 14 (quoting Tinicum Township, 99 A.3d at 591).) Appellants assert that although the mulching operation on the 3-Acre Parcel at issue in Tinicum Township lacked a connection to the land, the mulching operation on the Property is sufficiently connected. Appellants argue that the mulching operations on the two parcels are materially different because unlike the 3-Acre Parcel, "wood fibers from the [Property] are part of the raw materials that are utilized in making mulch on the [Property]." (Appellants' Br. at 15-16.) According to Appellants, because "wood fibers" extracted from the Property are used in the mulching operation, the mulching operation has some connection to the land. Appellants stress that Tinicum Township required that there be "some connection" to the land and argue that the trial court engrafted an improper additional requirement upon Appellants by requiring that the operation be *significantly* connected.

The evidence shows that the vast majority of materials used in the mulching operation are brought to the property from properties owned by the Nowicki family, job sites of landscapers and tree surgeons, yards throughout Southeastern Pennsylvania, and are purchased from the marketplace. (Hr'g Tr. at 164-65, April 30, 2014, C.R. at Item 19.) Once the raw materials are processed into mulch, Appellants move the mulch into a pile which, as of May 15, 2014, stood at fifty yards long, twenty-five yards wide, and twelve feet high. (October 2014 Op. at 6-7.) According to Jonathan Nowicki, Appellants sell six trailer loads of mulch on heavy days and two trailer loads on slow days. (Hr'g Tr. at 8, May 13, 2014, C.R. at Item 18.)

19

Mr. Nowicki testified that he is in the process of conducting timber stand improvement on the Property and clearing brush, and that the materials collected from this process are used in the mulch operation. (Hr'g Tr. at 165-66, April 30, 2014.) When asked about the wood materials taken from the Property for use in the mulching operation, Jonathan Nowicki, Mr. Nowicki's son and owner of Pennswood, testified as follows.

> On the peninsula, there was some brush up against a bunch of trailers . . . So I cleaned up all that brush along that – saplings and brush. There was a big pile of wood down the peninsula that – there was like sapling trees that the beaver ate. I picked up that stuff, it was a day's worth of cleanup, and carried that to the wood pile. And then over by the garden that we have, we cut down some trees there and cleaned up some brush. And then over towards I guess it would be the northeast corner, there was a bunch of trees that were fallen down and blown over that I cleaned up.

(Hr'g Tr. at 11-12, May 13, 2014.) Based on this evidence, the trial court concluded that the materials used in the mulch operation that derive from the Property are "insignificant compared to the raw materials that [Appellants] use from offsite sources" and concluded that the mulching operation was not sufficiently connected to the land to fall under the protections of the MPC. (October 2014 Op. at 11.)

The trial court also did not credit testimony showing that Appellants planned to use trees from the Property in the mulch operation and to use the finished mulch on the Property itself. A trial court, sitting without a jury, is the exclusive arbiter of witness credibility. In re Sullivan, 37 A.3d 1250, 1256 (Pa. Cmwlth. 2012). We

20

are prohibited from making contrary credibility determinations to reach a contrary result. Id.

Because the amount of wood fibers extracted from the Property is so small in comparison to the entire operation and the trial court discredited testimony regarding other connections between the Property and the mulch operation conducted thereon, we cannot say that the trial court's reasoning is a *palpable misapplication* of our decision in Tinicum Township that warrants our intervention at this stage.

In sum, because the trial court had reasonable grounds to conclude that the mulch operation on the Property violated the Ordinance and because the trial court's conclusion that the mulch operation does not fall under the protections of the MPC is not a palpable misapplication of our decision in Tinicum Township, we would not have disturbed the preliminary injunction, even if the argument was preserved for appeal.

## C. Contempt

Appellants argue that the trial court erred by holding Mr. Nowicki and River Road in contempt because they abided by the 2013 Injunction and, if they violated the 2013 Injunction, Mr. Nowicki and River Road violated it without wrongful intent. In this regard, Appellants first argue that contempt orders must include specific terms and that Paragraph C of the 2013 Injunction restricts Appellants from removing "[a]ny mulch and firewood remaining on the [3-Acre Parcel] on May 15, 2013." (2013 Injunction ¶ C, R.R. at 8a-9a.) According to Appellants,

they removed "wood fibers" from the 3-Acre Parcel, not mulch or firewood, and the trial court incorrectly used this conduct as proof that Appellants willfully violated the 2013 Injunction.[9] Appellants assert that if the trial court wished to enjoin Appellants from removing raw wood materials, such as wood fibers, the trial court could have done so. Appellants also argue that insofar as the trial court's 2013 Injunction was violated, the violation was not willful as the allegedly contemptuous actions were an attempt to avoid a catastrophic fire and the result of equipment breakdowns and vandalism.

For its part, the Township argues that Mr. Nowicki and River Road violated Paragraph C of the 2013 Injunction by not ceasing all mulch-related activities as ordered in that paragraph. (2013 Injunction ¶ C, R.R. at 8a-9a.) The Township further argues that, even if Mr. Nowicki and River Road did not violate the portion of Paragraph C of the 2013 Injunction, addressing removal of mulch and firewood, the trial court correctly concluded that Mr. Nowicki and River Road violated at

---

[9] Appellants also argue that the trial court erred by holding them in contempt based on activity on the Property when the 2013 Injunction only addressed the 3-Acre Parcel. Appellants note that the trial court found that Mr. Nowicki and River Road's activity on the Property "violates the spirit" of the 2013 Injunction and actions which violate the spirit of court orders do not constitute contempt. Appellants are correct that violating the spirit of an order is not grounds for contempt. See Marian Shop, Inc. v. Baird, 670 A.2d 671, 673 (Pa. Super. 1996) (stating that "an order whose specific terms have not been violated will not serve as the basis for a finding of contempt.") However, Appellants misread the trial court's October 15, 2014 opinion. The opinion states: "While we ultimately conclude that we cannot hold [Appellants] in contempt for processing [mulch] on the [Property], this activity clearly violates the spirit of the [2013 Injunction]." (October 2014 Op. at 15.) Further, in its Supplemental Opinion issued on September 1, 2015, the trial court stated that "Appellants could not [] be held in contempt for their activities related to the [Property] prior to October 15, 2014." (Trial Ct. Supp. Op., September 1, 2015 at 5, R.R. at 137a.) Because the above quotes show that the trial court's decision to hold Appellants in contempt did not rest on Appellants processing activities on the Property, we shall not address this issue any further.

least three other portions of the 2013 Injunction (Paragraphs A, D, and E) and that Appellants do not address these violations in their appeal.

We note that, like our review of a grant of a preliminary injunction discussed above, our review of contempt orders is highly deferential. "When considering an appeal from a contempt order," we place "great reliance . . . upon the discretion of the trial judge." Department of Environmental Resources v. Gentile, 683 A.2d 711, 712 (Pa. Cmwlth. 1996). An order of contempt will not be reversed absent a plain abuse of that discretion. In re Contempt of Cullen, 849 A.2d 1207, 1211 (Pa. Super. 2004). The Pennsylvania Supreme Court described the abuse of discretion standard in the civil contempt context as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judges. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Commonwealth v. Bowden, 838 A.2d 740, 761-62 (Pa. 2003) (internal citation omitted).

In a civil contempt proceeding, the burden is on the complaining party to prove noncompliance with a court order by a preponderance of the evidence. Cecil Township v. Klements, 821 A.2d 670, 675 (Pa. Cmwlth. 2003). Civil contempt is only appropriate if the complainant proves the following elements:

(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

Cullen, 849 A.2d at 1210-11. Failing to abide by vague orders is not a basis for civil contempt. Id. Nor is failing to abide by a court order when the alleged contemnor is unable to perform and has attempted to perform in good faith. Cecil Township, 821 A.2d at 675. The "[i]nability to comply is an affirmative defense which must be proved by the alleged contemnor." Id.

We find no abuse of discretion in the trial court's conclusion that the Township met its burden to prove, by a preponderance of the evidence, that Mr. Nowicki and River Road violated the 2013 Injunction, and did so volitionally. Paragraph A of the 2013 Injunction states that "[n]o further materials for the processing of mulch and firewood may be brought onto the [3-Acre Parcel]." (2013 Injunction ¶ A, R.R. at 8a.) Mr. McGlynn testified that he observed "at one point[,] a great deal of pre-ground material, possibly from landscapers or tree contractors, was brought on [to the 3-Acre Parcel]" before being "pushed onto the [Property]." (Hr'g Tr. at 67, October 22, 2013.) Mr. McGlynn described that Appellants were using the 3-Acre Parcel as a "staging area" for the mulch operation on the Property. (Hr'g Tr. at 66, October 22, 2013.) Mr. Nowicki and River Road denied bringing new mulch material onto the 3-Acre Parcel, but offered no probative evidence rebutting Mr. McGlynn's testimony. (October 2014 Op. at 15.)

24

Paragraph D of the 2013 Injunction limits the hours of operation of mulch processing and truck traffic to between 7:00 a.m. and 5:00 p.m., Monday through Saturday. (2013 Injunction ¶ D, R.R. at 9a.) A neighboring landowner testified that, as of May 2013, blue Pennswood Hauling trucks began arriving between 5:00 a.m. and 5:30 a.m. Monday through Saturday. (Hr'g Tr. at 142-43, 147, October 22, 2013.) The neighbor could not see either the 3-Acre Parcel or the Property from her home; she only witnessed the trucks driving down the road to the properties. (Hr'g Tr. at 146, October 22, 2013.) Yet, because the trial court found that the 3-Acre Parcel was integral to Appellants' use of the Property and all truck traffic to the Property enters the 3-Acre Parcel at roughly the same time, the trial court found Mr. Nowicki and River Road in contempt of paragraph D of the 2013 Injunction. (October 2014 Op. at 19.) Mr. Nowicki and River Road offered only conflicting testimony to rebut the neighbor's testimony, which was found not credible. (October 2014 Op. at 18-19.)

Paragraph E of the 2013 Injunction states that "[n]o wood materials, whether they be raw materials, chips or mulch piles, may be stored west of the easterly line drawn on T-17." (2013 Injunction ¶ E, R.R. at 9a.) The trial court was presented with photographs showing that a pile of wood material had been stored west of the line on T-17 as of July 10, 2013, and Mr. McGlynn testified on April 30, 2014 that a large pile of wood material remained west of the line the morning he testified and presented the trial court with a photograph showing the wood pile in relation to the line drawn on T-17. (Hr'g Tr. at 66-71, April 30, 2014.) Mr. Nowicki and River Road denied that mulch-related materials were stored west of the line, but offered no proof to rebut Mr. McGlynn's credible testimony. (October 2014 Op. at 19.)

25

Because Mr. Nowicki and River Road did not rebut Mr. McGlynn's and the neighboring landowner's credible testimony with regard to Mr. Nowicki and River Road's violation of Paragraphs A, D, and E of the 2013 Injunction with probative evidence, the trial court did not abuse its discretion by concluding that the Township met its burden.

We also find no abuse of discretion in the trial court's conclusion that Mr. Nowicki and River Road acted with wrongful intent. Mr. Nowicki and River Road offered no justification for violating Paragraphs A, D, and E of the 2013 Injunction and the trial court did not believe Mr. Nowicki's justifications for violating Paragraph C of the 2013 Injunction. Mr. Nowicki testified to the events surrounding the 2013 Injunction in front of the trial court numerous times, and we defer to the credibility assessment of the trial court. Garr v. Peters, 773 A.2d 183, 189 (Pa. Super. 2001). Furthermore, our review reveals substantial support for the trial court's finding of wrongful intent. Mr. Nowicki and River Road understood the requirement to abide by court orders as they originally agreed to a temporary injunction on June 8, 2012, which included provisions similar to Paragraphs D and E of the 2013 Injunction. The trial court found them in contempt of this injunction and issued the 2013 Injunction. (2013 Injunction at 2, R.R. at 9a.) Notably, Appellants do not argue on appeal to this Court that the trial court erred in concluding that Mr. Nowicki and River Road violated Paragraphs A, D, and E of the 2013 Injunction. Thus, even if Mr. Nowicki and River Road did not act with wrongful intent when they violated Paragraph C of the 2013 Injunction, the trial court could find that Mr. Nowicki and River Road acted with wrongful intent when

they simply ignored other portions of the 2013 Injunction. Accordingly, the trial court's conclusion that Mr. Nowicki and River Road violated the 2013 Injunction with wrongful intent is not an abuse of discretion.

## III. CONCLUSION

In conclusion, we affirm the trial court because Appellants did not preserve any issues for appellate review. Additionally, as the foregoing analysis explains, even if Appellants had preserved the issues raised in their Brief to this Court, we would affirm the trial court because it had sufficient grounds to grant the Preliminary Injunction and did not abuse its discretion in finding Mr. Nowicki and River Road in contempt for violating the 2013 Injunction.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tinicum Township | : | |
| | : | |
| v. | : | No. 2114 C.D. 2014 |
| | : | |
| Allan J. Nowicki, River Road | : | |
| Quarry, LLC, Pennswood Hauling, | : | |
| LLC, and RRQ, LLC, | : | |
| | : | |
| Appellants | : | |
| | : | |
| Tinicum Township | : | |
| | : | |
| v. | : | No. 734 C.D. 2015 |
| | : | |
| Allan J. Nowicki, River Road | : | Argued: February 8, 2016 |
| Quarry, LLC, Pennswood Hauling, | : | |
| LLC, and RRQ, LLC, | : | |
| | : | |
| Appeal of: Allan J. Nowicki | : | |

# **O R D E R**


**NOW**, March 31, 2016, the October 15, 2014 and March 31, 2015 Orders of the Court of Common Pleas of Bucks County in the above-captioned matters are **AFFIRMED.**


_____

**RENÉE COHN JUBELIRER, Judge**